Drake, Oh. J.,
delivered the following opinion :
On the 15th of July, 1870, Congress passed the following 11 joint resolution, authorizing the Postmaster-General to adjust the accounts of George Ohorpenning,” (16 Stat. L. 673 :)
“That the Postmaster-General is hereby authorized and directed to investigate and adjust the claims of George Ohor-penning, under the first section of an act for his relief, approved March 3, 1857, on the basis of compensation allowed by said act for the regular service, and the claim growing out of the curtailment and annulment of his contract on route number 12,801, on the basis of his agreement with the Postmaster-General for the service, to be settled as provided for the services named in said act of March 3, 1857; and the right of appeal from the findings of the Postmaster-General to the Oourt of Claims is reserved and allowed to said claimant.”
In pursuance of the authority conferred by this resolution, the Postmaster-General proceeded to act, and on the 23d of December, 1870, signed, and sealed with the seal of the Post-Office De-imrtment, apaper, in which he reviewed the evidence presented before him, and sets forth the conclusions of fact and of law at which he had arrived, and closes it with the following paragraph :
“ Whereupon I, John A. J. Ores well, Postmaster-General of the United States, do hereby certify that, in performance of the duty enjoined upon me by the joint resolution of Congress, approved July 15, 1870,1 have investigated and adjusted the claims of George Ohorpenning, under the first section of an act for his relief, approved March 3,1857, on the basis of compensation allowed by said act for the regular service; and the claim growing out of the curtailment and annulment of his contract on route number twelve thousand eight hundred and one, on the basis of his agreement with the Postmaster-General for the service; and that I do hereby award and determine that there is due and owing to said George Ohorpenning from the United States, for and in full satisfaction and discharge of said claims, the sum of four hundred and forty-three thousand and ten dollars and sixty cents, ($443,010.60.)
“As witness my hand and seal of the Post-Office Department this twenty-third day of December, 1870.
[SEAL.] (Signed) “JlsTO. A. J. ORESWELL,
“ Postmaster- General.”
*627 .Before payment of the amount thus found in favor of the claimant, Congress, on the 9th of February, 1871, passed another joint resolution, (16 Stat. L., 702,) repealing the resolution of July 15, 1870. Thereupon the claimant sues in this court to recover the amount found in his favor, claiming that the above paper signed by the Postmaster-General was a valid and binding award and judgment against the United States in favor of the claimant for the amount therein stated.
To the claimant’s petition the defendants plead, 1, a general traverse; 2, limitation ; and 3, a special plea, setting up the repeal of the joint resolution of July 15, 1870, in bar of this action.
To thesepleas the claimant demurs; and the grounds on which he rests the demurer are: 1. That the joint resolution of July 15, 1870, was a submission by the Government of a controversy between it and the claimant to the arbitrament and award of the Postmaster-General; 2. That under that resolution the Postmaster-General was a judge or arbitrator invested with judicial power; 3. That his decision was a finality, or res adju-dicata; 4. That the submission by that resolution and the acquiescence and concurrence of the claimant in the Postmaster-General’s decision constitute a mutual settlement and adjustment, that binds the parties until set aside for cause or until shown to be erroneous or inequitable.
We gave very careful attention to the elaborate argument of the claimant’s counsel, but were unable to concur in his positions, for the reasons which we will now proceed to state.
In the first place, it will be observed that the joint resolution in question was passed, as claimant alleges in his petition, at his instance. It is, therefore, a fit case for the reiteration of the previously-expressed opinion of this court, that private acts of Congress are always to be strictly construed and never to be forced beyond their plain import. Most especially are they to be so construed as to prevent the entrapping of the Government by fixing upon it liability where the intention of Congress was only to authorize an investigation and adjustment. (Roberts Case, 6 C. Cls. R., p. 84.) Guided by this rule of construction, let us see whether the resolution of 1870 was, indeed, a submission by the Government of the matters therein mentioned to arbitrament and award.
A submission is a contract, by which parties agree to refer *628 matters which are in. dispute, difference, or doubt between them, to he finally decided by the award of judges named by the parties, and called arbitrators. (Morse on Arbitration, 36.) And in order to clothe a person with the authority of au arbitrator, the parties must mutually agree to be bound by the decision of the person chosen to determine the matter in controversy. (Gordon v. United States, 7 Wall., 188.) An arbitrament and award which concludes one party only is certainly an anomaly in the law. (Ibid.)
Beyond question, to constitute a submission there must be-words used which are apt to express the intention of both parties to make the submission. In Carmick & Ramsey's Case, (2 C. Cls. R., p. 126,) where an act of this description was construed, and where the Comptroller was authorized not only to “ adjust,” but also to “ adjudge and award according to the principles of law, equity, and justice,” this court held the words to constitute a submission to arbitration. Whether in this case words of such import have been used will now be considered.
It was contended that in the light of the decision of the Sa-íneme Court in Kendall v. United States. (12 Pet., 524,) the resolution here involved should be considered as using apt words to constitute a submission. Let us examine that case.
Stockton & Stokes were contractors for carrying the mail. The Postmaster-General made certain credits and allowances in their favor, which a succeeding Postmaster-General withdrew. The contractors memorialized Congress on the subject, and an act for their relief ivas passed, authorizing and directing the Solicitor of the Treasury “ to settle and adjust the claims” of the contractors, “and for this purpose to inquire into and determine the equity of the claims of them, or any of them, for or on account of any contract or additional contract with the said [late] Postmaster-General, on which their pay may have been suspended by the present Postmaster-General, and to make them such allowances therefor as, upon a full examination of all the evidence, may seem right, according to the principles of equity.” And the act then proceeded thus : “And the Postmaster-General be, and he is hereby, directed to credit such mail-contractors with whatever sum or sums of money, if any, the said Solicitor shall so decide to be due to them for or on account of any such service or contract.” The Solicitor performed his duty under this act, and reported to the Postmaster-Gen *629 eral bis decision and award in favor of Stockton & Stokes, allowing them $161,503.89. The Postmaster-General carried into eifect the act of Congress, so far as to cause them to be credited with the sum of $122,102.46, and refused to credit them with the remainder; whereupon they proceeded by mandamus to compel him to credit them with that remainder. The Supreme Court held the Solicitor to have been au arbitrator; that his -decision was final; that the Postmaster-General could not review it; that the crediting Stockton & Stokes with the amount of the award was a mere ministerial act, the performance of which by the Postmaster-General could be compelled by mandamus ; and it was so compelled.
It is quite impossible, as we conceive, to overlook the great difference between the comprehensive power conferred in that case upon the Solicitor and the limited one granted here to the Postmaster-General. There the Solicitor was authorized to do •three things which the Postmaster-General was not authorized to do here: 1. To settle as well as adjust the claims; 2. To determine the equity of the claims; and, 3. To make the parties such alloioanees as to him might seem right, according to the ■principles of equity. And to clothe his action with that finality which is of the essence of every award by an arbitrator, the act laid upon the Postmaster-General the imperative mandate to credit the parties with such allowances.
Contrasted with this we have here the simple, naked power “ to investigate and adjust.” There is no power to “settle,” no power to “determine” equities, no power to make “allowance” otherwise than upon the rules of adjustment laid down in the joint resolution; but the whole capacity conferred is merely to adjust. And what is it to adjust"? According to Worcester, it is “ to prepare and put in order for settlement; ” and, according to Webster, “to settle or bring to a satisfactory state, so that parties are agreed as to the result.” Manifestly, every arbitration contains an adjustment and more; but equally manifestly, every adjustment does not contain an arbitration. In no sense are the words “adjust”and“ arbitrate”convertible terms. It is, therefore, quite in vain to contend that the joint resolution involved in this case was a submission by the Government to an arbitrament and award.
But the claimant takes still higher ground, and insists that the power to adjust includes the power to adjudicate. This *630 position is less tenable than the other. To adjudicate is to try and determine as a court — to render a judgment or sentence upon a case presented.
We know of no case in which it was ever held that that high power was included in the word adjust. The nearest to it that we have observed is Vigo’s Case, (21 Wall., 648,) where the Supreme Court decided that a reference by Congress of a claim to this court, “with full jurisdiction to adjust and settle the same,” was a reference of it “for judicial determination;” and that from our decision of the cláim under such a reference an appeal would lie. But, obviously, the ruling there does not touch this case; for even if we leave out of view the effect of the word “settle,” in connection with “adjust,” which might-possibly be considered to have a material bearing upon the scope of the authority granted, there is this essential difference between the cases, that in Yigo’s the power was conferred upon a body having already the capacities and attributes of a judicial tribunal, and presumably the legislature intended it to exercise them in making the adjustment and settlement; while in this case the naked power to adjust was conferred upon an officer having no such capacities or attributes, and therefore incapable in law of rendering a judicial judgment. Where a reference in a case of this description is made to such an officer, if it be intended that he shall exercise functions other than those appertaining to his office, that intent must be suitably expressed, or he cannot exercise them. Hence in Kendall’s Case, as in others, such language was used, while here it was not. When the legislature fails to clothe an officer, in terms, with judicial faculties, it is not for this court to infer them from language apparently having a different intent.
But the closing words of the resolution seem to us cumulatively conclusive against the Postmaster-General’s action being regarded either as an award in arbitration or as an adjudication. Those words are, “ and the right of appeal from the findings of the Postmaster-General to the Court of Claims is reserved and allowed to said claimant.” The use here of the word “ findings ” indicates what Congress intended in this resolution. That word has a well-known legal meaning -wholly distinct from that of either award or adjudication. It is the equivalent of verdict, and means an ascertainment of a fact or facts, as the basis of' further action by the authority, executive or judicial, which- *631 authorized the finding. The use of that word, instead of award or adjudication, makes the resolution consistent in its terms, while the use of either of the latter would have made the concluding clause express inferential!? what the preceding terms did not express or recognize.
Every view that we have been enabled to take of the matter leads us to the conclusion that the Postmaster-General was not, by the joint resolution, constituted either an arbitrator or a judge, but was invested with a mere ministerial function, which, to be sure, required the exercise of his judgment, but neither required nor authorized the making of an award nor the rendition of a judicial decision. (Gordon v. United States, 7 Wall., 188.)
If, then,-he was neither an arbitrator nor a judge, it seems to us to follow, of necessity, that when he passed out of the province of a mere ministerial adjuster, and exercised judicial functions, his acts were unauthorized and null. When, therefore, he declared that he did “award and determine that there is due and owing to said George Ghorpenning, from the United States, for and in full satisfaction and discharge of said claims, the sum of $443,010.60,w if he meant anything more than a mere announcement of his adjustment, he transcended his lawful authority, and no force or effect can be given to his action, either as an award under an arbitrament or as a judicial determination.
But the claimant urges that if the resolution neither created a submission to arbitration nor authorized an adjudication, yet, as it empowered the Postmaster-General to investigate and adjust, and as he did investigate and adjust, and found in favor of the claimant, his finding must be paid by the Government. In its bearing on the operations of the Government this is a rather serious proposition, for, if tenable in this case, it is equally so in every case where the accounting-officers investigate and adjust a claim under the general laws. If it be true that the Government is bound to pay this finding of the Postmaster-General, notwithstanding the repeal by Congress of the resolution under which he acted, it would, as we conceive, be equally true that a finding and allowance by the accounting-officers made under the general law would have to be paid, though Congress, after it was made, should, by law, have set aside the finding and allowance. It is not for a moment to be supposed that Congress could ever intend, by any legislation, *632 general or special, to place the Government in any such position. In fact, the claimant’s right to payment of the amount found by the Postmaster-General in his favor did not, by that finding, become a vested right, but was still in fieri. On the one hand, he could reject it and appeal to this court; and, on the other, the Government could reject it, as it did by repealing the resolution of 1870.
As to the legal effect of that repeal, we can see no substantial difference between this case and that of Gordon, (1 C. Cls. R., p. 1,) in which the judgment of this court was affirmed by the Supreme Court, (7 Wall., 188.) There, under authority of a joint resolution of-Congress, the Secretary of War had made an allowance in favor of a claimant; after which Congress repealed the resolution under which he had acted, and declared that all proceedings under it should be null and void. The Supreme Court held, as this court had, that the Secretary’s allowance was no award by an arbitrator; and the concluding-sentences of the opinion of that court apply as well to this case as to that. “The joint resolution of June 1, 1860,” say the court, “gave the appellant a tribunal before which his claims might be investigated. The repeal of that resolution only deprived him of that tribunal. It was competent for Congress to abolish the tribunal it created for the adjustment of the appellant’s claims, or it might have committed them to some other authority. In either event the claimant’s right -would not have been violated; only his remedy for the enforcement of those rights would have been taken away or changed. The power that created this tribunal might rightfully destroy it, unless some rights had accrued which were the result of the creation of such tribunal and inseparable from it. Here no such rights had resulted from the passage of this resolution. The appellant was left where that resolution found him. His right to importune Congress for more was not at all impaired by its repeal.”
The fact that there the repealing resolution declared all proceedings under the former resolution null and void, does not make any essential difference between that case and this. The vital point there was, that the authority to the Secretary of War had ceased to exist, and his action could not survive his authority. The well-settled principle in such cases is that inchoate rights conferred by statute are destroyed by the abro *633 ■gation of the statute. The repealing' resolution, therefore, made the Secretary’s proceedings no more certainly null by declaring them so, than they would have been by the simple repeal without such declaration.
The result of the conclusions we have expressed is that there is nothing in the claimant’s case of which this court can take jurisdiction. His action is upon the Postmaster-General’s allowance, which he assumes to be “ a valid and binding award and judgment,” and he asks judgment upon it as the foundation of his right, and for the amount of it as a liquidated and fixed debt. As it is neither an award nor a judgment it is not a contract, expressed or implied, -with the Government of the United States; and, as the resolution is repealed under which it was made, it is not a claim founded upon a law of Congress; and, as it is not founded upon a regulation of an Executive Department, there is nothing in it which brings the case within the range of our jurisdiction.
In our opinion the demurrer ought to be overruled and the petition dismissed.